IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SELF-INSUREDS' SECURITY FUND,

    Plaintiff,

  v.

GALLAGHER BASSETT SERVICES,

    Defendant.
_____/

No. C 06-02828 JSW

**NOTICE OF TENTATIVE RULING AND QUESTIONS FOR HEARING**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING TENTATIVE RULING AND QUESTIONS FOR THE HEARING SCHEDULED ON AUGUST 24, 2007, AT 9:00 A.M.:

    The Court has reviewed the parties' memoranda of points and authorities and, thus, does not wish to hear the parties reargue matters addressed in those pleadings. If the parties intend to rely on legal authorities not cited in their briefs, they are ORDERED to notify the Court and opposing counsel of these authorities reasonably in advance of the hearing and to make copies available at the hearing. If the parties submit such additional authorities, they are ORDERED to submit the citations to the authorities only, without argument or additional briefing. *Cf.* N.D. Civil Local Rule 7-3(d). The parties will be given the opportunity at oral argument to explain their reliance on such authority.

    The Court **tentatively DENIES Plaintiff's motion.** The Court **tentatively DENIES** Defendant's motion. Each party shall have fifteen (15) minutes to address the following questions:

1. It appears that Exhibit E to the Declaration of Jennifer Lynch in Support of Gallagher's Motion for Summary Judgment may contain personal information. Does Gallagher intend to file a motion to seal that exhibit or to submit a redacted version of it?

2. Gallagher objects to and moves to strike the Barbagallo Report.

   a. What is the Fund's response to Mr. Barbagallo's testimony that neither he nor his team members had any experience with 8 Cal. Regs. § 15300 prior to his engagement on this case? (*See* Declaration of Elizabeth Kennedy in Support of Reply ("Kennedy Reply Decl."), Ex. A (Barbagallo Depo. at 73:4-74:7.)

   b. Does Mr. Barbagallo have experience with setting reserves for insurance claims in general? If so, how would Gallagher argue that such experience differs materially from setting reserves in workers' compensation cases?

   c. Gallagher objects to a lack of documentation to support Mr. Barbagallo's opinions. Is Gallagher referring to the Exhibit referenced in the report, or is it referring to the underlying Gallagher documents that Mr. Barbagallo used to set forth his opinions?

   d. If the latter, is Gallagher truly objecting to the lack of receiving its own documentation or, is its objection based upon the fact that the Fund should have submitted those documents to the Court?

3. The expert reports offer competing conclusions on the issue of negligence. Those conclusions are based in part on the fact that the parties differ in their opinion of whether the ultimate issue of negligence should be evaluated on a "claim-by-claim" basis or upon the "total accrued liability."

   a. Setting aside the Fund's arguments on reply regarding statutory construction and the deference to be afforded an agency's interpretation of its regulations, does either party have any case law that addresses this particular issue or is this a case of first impression?

   b. How does Gallagher respond to the Fund's argument on reply that the "total accrued liability" simply is the sum of other amounts to be reported to the SIP, including each individual claim's estimated future liability?

   c. What evidence is in the record to support the Fund's argument as to how "total accrued liability" is calculated?

   d. Does Gallagher dispute the fact that it erred in calculating individual claims? If so, where in the record can the Court find evidence to contradict the Fund's expert on that point?

4. In its reply, the Fund posits that if Gallagher underestimated one indemnity claim, that fact might give rise to a finding of negligence but that it would not warrant a lawsuit. (*See* Fund Reply at 8 (noting that "whether a *di minimis* violation" of duty of care would be grounds for lawsuit is not at issue in this case). It appears to the Court that the Fund is arguing for strict liability. Furthermore, notwithstanding the *di minimis* argument, the Fund heavily relies on the percentages of claims that allegedly were calculated incorrectly to support its argument that Gallagher was negligent.

California courts have stated that, with respect to setting insurance related reserves, "it is a task that requires the exercise of judgment and is not an exact science. Insurers have discretion in setting reserves, and there is an acceptable range of reserves a carrier could set without incurring liability. '[A] particular reserve amount may be substantially more or less than the amount ultimately paid on a particular claim.'" *Lance Camper Mfg. Co. v. Republic Indemnity Co.*, 90 Cal. App. 4th 1151, 1155 (2001) (quoting *MacGregor Yacht Corp. v. State Comp. Ins. Fund*, 63 Cal. App. 4th 448, 457 (1998)).

Where in the record can the Court find support for the proposition that these percentages are statistically significant or otherwise violate an industry standard of care? The Fund's expert seems to rely solely on his own opinion of what would constitute an unacceptable percentage of underestimations. (*See* Declaration of Elizabeth Kennedy, Ex. A (Barbagallo Depo. at 71:19-72:1.)

5. The Fund also relies on a *res ipsa loquitor* theory of negligence. (Mot. at 17.)

   a. Given the case law cited in question 4, would the Fund concede that it would be possible to underestimate a reserve without doing so in a negligent fashion?

   b. If the Fund concedes that the answer to question 5.a. is yes, how can the doctrine of *res ipsa loquitor* apply? *See, e.g., Brown v. Power Unified School Dist.*, 4 Cal. 4th 820, 825 (1993) (noting, in part, that for presumption of *res ipsa loquitor* to apply, accident or injury "must be of a kind which ordinarily does not occur in the absence of someone's negligence").

   c. Does the Fund have any case law to suggest that the doctrine of *res ipsa loquitor* applies in this type of factual situation, *i.e.* where some degree of judgment must be applied?

6. The Fund appears to premise its negligence argument in part on the fact that Gallagher uses the MIRA program to estimate future liabilities. The deposition testimony submitted by Gallagher suggests that MIRA was used as a tool but was not used by Gallagher to create quotes for future liabilities and that Gallagher set reserves *higher* than the MIRA estimate.

   a. Why does that fact not create a genuine issue of material fact on Gallagher's reserving practices and whether they fell within an appropriate standard of care?

   b. Does the Fund have any evidence that a tool like MIRA should not be used in the estimation process?

   c. Where in the record can the Court find evidence of the type of procedures or practices a reasonably prudent claims administrator would use to estimate future liabilities?

7. With respect to the Section 17200 claim, Gallagher's arguments appear to focus on monetary damages. If, however, if the Fund's focus is on specific practices that allegedly lead to underreserving (for example, Gallagher's use of the MIRA program) and if it is those practices that the Fund seeks to enjoin through the Section 17200 action, why would that not create a genuine issue of material fact as to whether the Fund has standing to enjoin those practices? That is, if the Court cannot say as a matter of law that Gallagher's practices are negligent, how

3

can the Court say as a matter of law that the Fund has not been injured (and will not be injured in the future) as a result of those practices?

8. Evidence submitted by Gallagher suggests that in the last twenty years, only sixty self-insurer's have become insolvent and defaulted on their obligations. (*See* Kennedy Reply Decl., Ex. J at 2.) Why does that evidence not undercut the Fund's arguments on the credible threat of harm and the imminency of such harm?

9. Gallagher submits an excerpt of a presentation that includes a statement by the Fund's counsel that, with respect to TPAs, the Fund would seek to made whole *to extent of under-reserving.* (*See* Lynch Decl., Ex. D.) Why does that statement not support Gallagher's argument on damages?

10. In opposition to Gallagher's motion, the Fund argues that the total amount of the underreserving might equal what it has paid out on claims. (Fund Opp. at 17-18.) Although the amount of the underreserving may cover all of the Fund's alleged losses, the issue before the Court is whether, as a matter of law, the Fund is entitled to particular types of damages.

   a. What is the Fund's best argument that the plain language of Labor Code § 3744 does not limit its claim for damages to the amount that Gallagher underreserved claims?

   b. Labor Code § 3744(c) permits the Fund to bring this action "to recover compensation paid and liability assumed by the fund...." Why would that language not encompass the damages the Fund seeks?

   c. How does Gallagher respond to the Fund's assertion that the definition of "incurred liabilities for the payment of compensation" would encompass the costs of administrating claims and legal costs incurred in connection with administrating claims?

   d. The Fund asserts that the security deposit is intended to cover claims that have not yet been filed and that it is entitled to damages from Gallagher for such claims. (Fund Opp. at 18.) Yet the Fund also argues that the "total accrued liability" is calculated in part by the sum of each individual claim. (*See* Question 3.) If that is the case, how can Gallagher be liable for underestimating claims that had not yet been filed?

11. Are there any other issues the parties wish to address?

Dated: August 20, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

4