IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SELF-INSUREDS' SECURITY FUND, | |
| Plaintiff, | No. C 06-02828 JSW |
| v. | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION AND DENYING DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION** |
| GALLAGHER BASSETT SERVICES, INC. | |
| Defendant. | |

## INTRODUCTION

This matter comes before the Court upon consideration of the motion for summary adjudication filed by Plaintiff Self-Insureds' Security Fund ("the Fund") and upon consideration of the motion for summary adjudication filed by Defendant Gallagher Bassett Services, Inc. ("Gallagher"). Having considered the parties' pleadings, relevant legal authority, and having had the benefit of oral argument, the Court HEREBY DENIES the Fund's motion and DENIES Gallagher's motion.

## BACKGROUND

**A.    Procedural History.**

On March 27, 2006, the Fund filed this action against Gallagher in San Francisco Superior Court. On April 25, 2006, Gallagher removed the action to this Court. On September 25, 2006, the Fund filed its First Amended Complaint ("FAC"), in which it added a claim for relief under California Business and Professions Code § 17200 ("Section 17200").

1   On October 26, 2007, pursuant to Federal Rule of Civil Procedure 12(b)(6), Gallagher
2   moved to dismiss the Section 17200 claim for lack of standing.  On February 2, 2007, the Court
3   denied Gallagher's motion to dismiss and denied subsequent motions for leave to reconsider
4   that ruling and to certify it for interlocutory appeal.  (Docket Nos. 31, 36, 39.)  The Court,
5   however, noted that its rulings on the issue of standing were without prejudice to Gallagher
6   raising the issue in a motion for summary judgment.  (*See* Docket No. 39.)

**B.    Factual Background.**

The following facts are undisputed.  The Fund is a non-profit mutual benefit corporation established pursuant to California Labor Code § 3740, *et seq.*  (FAC ¶ 7.)  It was established "to provide for the continuation of workers' compensation benefits delayed due to the failure of a private self-insured employer to meet its compensation obligations when the employers' security deposit is either inadequate or not immediately accessible for the payment of benefits."  Cal. Lab. Code § 3740.

If an employer chooses to self-insure its workers' compensation claims, it must obtain a certificate of consent from the Director of the Department of Industrial Relations ("DIR").  *Id.* § 3700(c).  A private self-insurer also must post a security deposit.  *Id.* § 3701(b).  The private self-insurer also must file annual reports detailing its liabilities.  *Id.* § 3702.2.  If it so chooses, a private self-insurer may retain a third-party administrator ("TPA") to estimate its future liabilities and to administer its workers' compensation claims.  *Id.* § 3702.1.

Gallagher is a TPA retained by a private self-insurer, House2Home f/k/a HomeBase ("HomeBase").  Gallagher prepared the HomeBase Annual Report for the year ending December 31, 2000 ("the HomeBase 2000 Annual Report").  (*See* Declaration of Jiyun Cameron Lee ("Lee Decl."), Ex. L.)  Gallagher, under penalty of perjury, estimated that HomeBase's future workers' compensation liability was $9,070,293.  (*Id.* at GB000002-3.)  Based on this estimate, HomeBase posted a security deposit in the amount of $12,812,999.  (*Id.* at GB000006.)

In 2001, HomeBase filed for bankruptcy, and the Fund assumed responsibilities for the management and payment of the HomeBase workers' compensation claims.  (FAC ¶ 28.)  The

1 Fund contends that Gallagher acted negligently when it prepared the HomeBase 2000 Annual
2 Report and underestimated future liabilties. The Fund contends that as a result, the HomeBase
3 security deposit for year-end 2000 was insufficient. The Fund also contends that Gallagher
4 continues to act negligently because its business practices consistently result in underestimating
5 future liabilities for its clients, leading to underfunded security deposits.
6 The Court shall address additional facts as necessary to its analysis in the remainder of
7 this Order.

## ANALYSIS

The Fund moves for summary adjudication on the issue of negligence as to each of the five causes of action asserted in the FAC. Gallagher moves for summary adjudication on the issue of standing as to the Section 17200 claim and on the issue of damages.

**A.     Legal Standards on Motions for Summary Adjudication.**

A court may grant summary judgment as to all or a part of a party's claims. Fed. R. Civ. P. 56(a). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).    A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other

1  than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving
2  party must go beyond the pleadings and by its own evidence "set forth specific facts showing
3  that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must
4  "identify with reasonable particularity the evidence that precludes summary judgment."
5  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55
6  F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in
7  search of a genuine issue of triable fact"). If the non-moving party fails to make this showing,
8  the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.     Evidentiary Objections**.

   **1.     Gallagher's Objections.**

         **a.     Barbagallo Declaration and Report.**

Gallagher objects to and moves to strike the expert report prepared by William C. Barbagallo ("Mr. Barbagallo"). The Fund contends that Mr. Barbagallo is not qualified to testify as an expert about California workers' compensation claims adjustment. Gallagher also objects to Mr. Barbagallo's declaration and report on the ground that his team prepared most of the report. (*See* Supplemental Objections to Declaration and Expert Report of Plaintiff's Expert William C. Barbagallo.)

Mr. Barbagallo attests that he has "over 27 years of experience as a claim executive for insurers and reinsurers." (Barbagallo Decl. ¶ 2, Ex. 1 (*Curriculum Vitae*).) His *curriculum vitae* states that he has provided "due diligence reviews of various liquidations and third party administrators for several State Guaranty Funds," including California. (*Id.*, Ex. 1 at 2.) Mr. Barbagallo also outlined his experience and training with respect to workers' compensation reserving in his deposition. Based on his testimony, this was general training that he received in the 1980's and 1990's. It also appears that much of Mr. Barbagallo's work focused on reinsurance. (*See* Docket 155, Excerpts from the August 3, 2007 Deposition of William Barbagallo, Ex. 1 (Barbagallo Depo. at 47:7-49:12, 52:9-54:1.) In addition, he also testified that, with one exception, he does not have specific experience with estimating reserves for workers' compensation claims in California or the regulations applicable to such claims. (*See*

4

1  Declaration of Elizabeth Kennedy in Support of Defendant's Reply ("Kennedy Reply Decl."),
2  Ex. A (Barbagallo Depo. at 54:2-60:16).)

3  Given Mr. Barbagallo's general experience in the insurance field and his testimony that
4  he has had training in reserving and estimating workers' compensation claims, the Court finds
5  that Gallagher's objections to his report on this basis are directed to the weight to afford Mr.
6  Barbagallo's opinion, rather than its admissibility. Gallagher's objection to the Barbagallo
7  Declaration and Report are OVERRULED on this basis.

8  Gallagher also objects to the Barbagallo Report on the ground that it does not identify
9  the rationale for his conclusions about Gallagher's alleged under-reserving, *i.e.* the reasons he
10  and his team set the reserves as they did. Gallagher contends that this is not in compliance with
11  California Code of Regulations § 15400. Section 15400 requires that every self-insurer or its
12  administrative agency keep a claim file and sets forth the information that shall be kept in such
13  files. That section also provides that, for injuries occurring after January 1, 2006, additional
14  information, including "itemized written documentation showing the basis for the calculation of
15  estimated future liability and for each change in estimated future liability for the claim," is to be
16  contained within a claim file. 8 Cal. Code Regs. § 15400(c).

17  In his Report, Mr. Barbagallo notes that he relied on Gallagher's claim files, states that
18  he followed the provisions of Section 15300, notes where his calculations on reserves differ
19  from Gallagher's calculations, and sets forth the bases for his opinions. (*See* Barbagallo Decl.,
20  Ex. 2.) To the extent Mr. Barbagallo has not included the written documentation, *i.e.* his
21  workpapers, showing how he calculated reserves on a particular claim, the Court again finds
22  that objection goes to the weight to be afforded his opinion, rather than to the issue of
23  admissibility.[1] Thus, the Court will not strike the Report on that basis and Gallagher's
24  objections are OVERRULED.

---

[1] Mr. Barbagallo's Report refers to an Exhibit I, which is not attached to the Report submitted to the Court. In his Report, however, Mr. Barbagallo "refer[s] the reader to Exhibit I for further insight into the reasons for the understatements" in Gallagher's reserves. The Report submitted to the Court for consideration is, therefore, incomplete and the Court must take that fact into account in determining whether Mr. Barbagallo's Report is material to the resolution of this motion.

5

1   Finally, Gallagher objects to the statements on page seven of Mr. Barbagallo's Report
2   on the ground that it contains improper legal analysis because it purports to restate the
3   requirements of Section 15300. That objection is OVERRULED, but the Court shall rely solely
4   on text of the regulation in its analysis.[2]

### b. Declaration of Phillip Stark

Gallagher objects to the Declaration of Phillip Stark on the ground that Mr. Stark's report and declaration depend on their entirety on the Barbagallo Report. Gallagher argues that because the latter is unreliable, the former also is unreliable and cannot be considered. For the reasons set forth above, Gallagher's objections are OVERRULED.

### c. Declaration of Mark Johnson.

Gallagher invokes the "sham affidavit" rule and objects to paragraphs seven and eight of the Declaration of Mark Johnson. *See Martinez v. Marin Sanitary Serv.*, 349 F. Supp. 2d 1234, 1242-43 (N.D. Cal. 2004) (citing *Radobenko v. Automated Equip. Copr.*, 520 F.2d 540, 544 (9th Cir. 1975) ("Under the 'sham affidavit' rule, a party cannot create a genuine issue of material fact for summary judgment purposes by submitting an affidavit or declaration that contradicts his previous testimony without sufficient explanation for the contradiction."). The Court has compared the statements in the paragraphs to which Gallagher objects with Mr. Johnson's deposition testimony and concludes that they do not directly contradict one another. Accordingly, Gallagher's objections to these paragraphs are OVERRULED.

Gallagher also objects to paragraphs two through four of the Johnson Declaration, on the grounds that these paragraphs set forth improper legal conclusions and are not based upon Mr. Johnson's personal knowledge. Mr. Johnson attests that he is in charge of the Office of Self-Insurance Plans for the Department of Industrial Relations, that his office conducts audits of self-insurers and TPAs, and that he had a part in revising the regulations applicable to self-

---

[2]   Mr. Barbagallo states, for example, that Section 15300 requires that "[w]here there are conflicting disability ratings in the file, the indemnity reserve must be calculated using the highest rating." (Barbagallo Report at 7.) The text of the regulation states that "in estimating future permanent disability costs, where there are conflicting permanent disability ratings, the estimate shall be based on the higher rating unless there is sufficient evidence in the claim file to support a lower rating." 8 Cal. Code Regs. § 15300(b)(2).

6

1  insurers.  (*See* Declaration of Enrique Monagas, Ex. C (Johnson Depo. at 21:23-22:21, 63:15-
2  64:8).)  Thus, it appears that Mr. Johnson would have personal knowledge of the regulations
3  applicable to self-insurers and TPAs and can also testify as to his understanding of how they are
4  to be applied in practice.  Defendant's objections to these portions of the Johnson declaration
5  are OVERRULED.

**c.     Deposition Excerpts.**

Gallagher objects to certain deposition excerpts submitted by the Fund on the ground that those experts do not support the assertions for which they are cited.  These objections are OVERRULED.

**2.     The Fund's Objections.**

**a.     Dixon Declaration.**

The Fund objects to a number of statements in the Declaration of Margie Dixon on numerous bases.  Because Ms. Dixon's declaration is not necessary to resolution of this motion, the Court need not and does not resolve these objections.

**b.     Miller Declaration.**

The Fund also objects to statements in Mr. Miller's declaration regarding Gallagher's performances on routine audits conducted by the Office of Self-Insurance Plans, in comparison to other TPAs.  The Court finds that those statements are not material to resolution of the instant motion.  Accordingly, the Court need not, and does not, rule on these objections.

**C.     The Fund's Motion for Summary Adjudication is Denied.**

The Fund has "the right to bring an action against any person to recover compensation paid and liability assumed by the [Fund], including ... any person whose negligence or breach of any obligation contributed to any underestimation of the self-insured employer's total accrued liability as reported to the" Director of the Department of Industrial Relations.  Cal. Lab. Code § 3744.

The parties agree that the facts and legal circumstances in this case are matters of first impression.  However, each of the Fund's claims for relief are grounded in negligence.  As with any negligence claim, the Fund "must show that the defendant had a duty to use due care, that

7

1  he breached that duty, and that the breach was a proximate or legal cause of the resulting
2  injury." *Rice v. CenterPoint, Inc.*, 65 Cal. Rptr. 3d 312, 315 (Cal. App. 2007) (quoting *Hansara
3  v. Superior Court*, 7 Cal. App. 4th 630, 639 (1992)).

4        The Fund contends that the applicable duty of care is set forth in 8 Cal. Code Regs. §
5  15300. That section requires a third party administrator "set a realistic estimate of future
6  liability for *each indemnity claim* listed on the self insurer's annual report based on
7  computations which reflect the probable total future cost of compensation and medical benefits
8  due or that can reasonably expected to be due over the life of the claim." 8 Cal. Code Regs. §
9  15300(b) (emphasis added). The Fund argues that the evidence demonstrates that Gallagher did
10 not accurately estimate each indemnity claim and that, therefore, it was negligent.

11       Gallagher, in turn, argues the applicable standard of care is set forth in the Labor Code,
12 which provides that "[a] third-party administrator ... shall estimate the *total accrued liability* of
13 the employer for the payment of compensation for the employer's annual report to the director
14 and shall make the estimate both *in good faith and with the exercise of a reasonable degree of
15 care.*" Cal. Lab. Code § 3702.1(d) (emphasis added); *see also id.* § 3744(c) ("The fund shall
16 have the right to bring an action against ... any person whose negligence or breach of any
17 obligation contributed to any underestimation of the self-insured employer's *total accrued
18 liability* as reported to the director.") (emphasis added).[3]

19       Reading these provisions of the regulations and the Labor Code together, it is apparent
20 to the Court that they complement one another. That is, the regulations set forth the principles
21 to which a TPA "shall adhere" in estimating future liabilities on each claim, which in turn are a
22 part of the total accrued liability. Indeed, Gallagher agrees that in order to estimate the total
23 accrued liability "in good faith and with the exercise of a reasonable degree of care," one must
24 start by calculating the estimated future liability for each individual claim. Accordingly, the
25 Court concurs with the Fund that to determine whether or not a TPA negligently prepared an

---

[3] The parties have not presented any legal authority, other than the respective statutory and regulatory language, to support their respective positions on the appropriate standard of care.

8

1 annual report, the evaluation must focus on a TPA's conduct in connection with how it
2 estimates individual claims.

3       Although the Court agrees with the Fund on the appropriate standard of care, the Fund
4 has not met its burden to show that, as a matter of law, Gallagher breached its duty. As noted
5 by California courts, the practice of setting insurance related reserves is a "task that requires the
6 exercise of judgment and is not an exact science. Insurers have discretion in setting reserves,
7 and there is an acceptable range of reserves a carrier could set without incurring liability. A
8 particular reserve amount may be substantially more or less than the amount ultimately paid on
9 a particular claim." *Lance Camper Mfg. Co. v. Republic Indemnity Co.*, 90 Cal. App. 4th 1151,
10 1155 (2001) (quoting *MacGregor Yacht Corp. v. State Comp. Ins. Fund*, 63 Cal. App. 4th 448,
11 457 (1998)) (internal quotations and brackets omitted).

12       In its effort to show that Gallagher was negligent, the Fund offers Mr. Guyer's opinion
13 that Gallagher materially underestimated future liabilities for 41.1% of injured workers in the
14 HomeBase 2000 Annual Report. (Declaration of David Guyer ("Guyer Decl."), Ex. 3 at 2.)
15 Mr. Guyer defines "materially" to mean "10%." (*Id.* at n. 2.) The Fund also relies on Mr.
16 Barbagallo's opinion in which he states that of 575 randomly chosen claim files, taken from a
17 list of 7720 claims in the most recent annual report Gallagher prepared for 57 California
18 employers, Gallagher under-reserved future medical costs in approximately 24% of these 575
19 cases. (*See* Barbagallo Decl., Ex. 2 at 10.)

20       However, there is no evidence before the Court to show that Mr. Guyer's assertion that a
21 10% deviation is considered material within the industry. Similarly, there is no evidence in the
22 record from which the Court could draw any conclusions that the percentages proffered by Mr.
23 Barbagallo do not fall within an acceptable error range within the industry. Absent evidence of
24 what would be considered a material deviation on the estimate of a particular claim, the Court
25 cannot determine as a matter of law whether Gallagher was negligent when it prepared the

9

1  HomeBase 2000 Annual Report.[4] For similar reasons, the Court cannot say as a matter of law
2  that Gallagher continues to act negligently.

3  **D.   Gallagher's Motion for Summary Adjudication is Denied.**

4  **1.   Standing.**

5  Gallagher moves for summary adjudication and argues that the Fund cannot demonstrate
6  that it has Article III standing to pursue the Section 17200 claim. To establish Article III
7  standing, a plaintiff must demonstrate (1) it has suffered a personal injury or suffers the threat of
8  injury, (2) that the alleged injury is fairly traceable to the defendant's conduct, and (3) that the
9  injury would likely be redressed by the requested relief. *See Lujan v. Defenders of Wildlife*, 504
10 U.S. 555, 560-61(1992). As the Supreme Court stated in *Defenders of Wildlife*, to show injury
11 in fact, a plaintiff must show "an invasion of a legally protected interest." *Defenders of
12 Wildlife*, 504 U.S. at 560 & n.1.

13 The Fund alleges that the "injury" in this case is Gallagher's alleged invasion of its
14 legally protected interest in having adequate security deposits on hand. Further, the Fund has
15 put forth evidence that, if proven, suggests that Gallagher's practices result in the posting of
16 inadequate security deposits, *i.e.* that the alleged injury is fairly traceable to Gallagher's
17 conduct. To the extent the Fund seeks to enjoin Gallagher from engaging in specific practices
18 that lead to the alleged under-reserving, the Court concludes that the Fund has shown that the
19 injury is redressable.

20 The true dispute over standing is whether the Fund has "demonstrate[d] a credible threat
21 of future injury which is sufficiently concrete and particularized to meet the 'case or
22 controversy' requirement of Article III." *Stevens v. Harper*, 213 F.R.D. 358, 366 (E.D. Cal.
23 2002) (citing *Defenders of Wildlife*, 504 U.S. at 560-61 and *City of Los Angeles v. Lyons*, 461
24 U.S. 95, 101-04 (1983)); *see also Fortyune v. American Multi-Cinema, Inc.,* 364 F.3d 1075,
25 1081 (9th Cir. 2004) (plaintiff must demonstrate a "real and immediate threat of repeated

---

[4] In response to Gallagher's argument that under the Fund's theory it could be held liable for an error on a single claim, the Fund states "[w]hether a *di minimis* violation of that duty ... would be grounds for a lawsuit is not at issue here." (Fund Reply at 8:11-12.) This statement serves to reinforce the Court's view on the flaws in the Fund's argument on where the appropriate line should be drawn.

10

1 injury"). "The imminent threat showing is a separate jurisdictional requirement, arising
2 independently from Article III, that is grounded in the traditional limitations on the court's
3 power to grant injunctive relief." *Stevens*, 213 F.R.D. at 366.

4 The *Fortyune* case is instructive on this issue. In that case, the plaintiff, a quadrapeligic, filed a suit under the ADA against the defendant, a movie theater, which had a policy against asking its patrons to move from seats adjacent to wheelchair accessible seating during sold-out screeings, so that persons in wheelchairs could sit with their companions. *Fortyune*, 375 F.3d at 1078-79. The defendant contended that plaintiff lacked standing to pursue his ADA claims because his experience on the date in question was unique and unlikely to recur. *Id.* at 1081. The Ninth Circuit rejected the defendant's argument and noted that "a plaintiff may demonstrate that an injury is likely to recur by showing that the defendant had, at the time of the injury, a written policy, and that the injury stems from that policy. ... Where the harm alleged is directly traceable to a written policy ... there is an implicit likelihood of its repetition in the immediate future." *Id.* (quoting *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001)) (internal quotations and brackets omitted).

In this case, the Fund puts forth evidence that Gallagher engages in specific practices and has certain policies that lead to underestimating future liabilities on a consistent basis. The Court concludes that, taking these facts in the light most favorable to the Fund, the Fund has shown a credible threat that the alleged injury, *i.e.* under-reserved security deposits, would occur again in the future. Whether it can prove these allegations, however, is a matter to be determined at trial.

**2.     Damages.**

Gallagher also moves for summary adjudication on the Fund's "alternative" theory of damages.[5] The thrust of Gallagher's argument is that the Fund should be limited to recovering the damages that Gallagher allegedly caused. Gallagher argues that those damages must be

---

[5] It is not clear to the Court that the Fund is pursuing an "alternative" theory of damages. Indeed, at the hearing on these motions, the Fund conceded that "under [Section] 3744 [it is] limited in the amount of damages by the amount of the under-reserving in the security deposit," but argued that it was not limited to the type of damages that would be subsumed within the amount of any shortfall that is proven to exist.

11

limited to the difference, if any, between the security deposit that was posted for the HomeBase 2000 Annual Report and the amount that should have been posted.

The record before the Court does not contain specific information as to the nature and amount of damages the Fund seeks or the legal theories supporting its damage claims. As such, the Court cannot evaluate the record to determine whether Gallagher's conduct can be said to have been the legal cause of a certain type of damage. However, to the extent Gallagher contends that the Fund is not entitled to seek *any* administrative and legal costs as part of its damages, Gallagher's motion is denied. The purpose of the security deposit is to "secure incurred liabilities," and by statute "[t]he minimum deposit shall be 125 percent of the private self-insurer's estimated future liability for compensation to secure payment of compensation plus 10 percent of the private self-insurer's estimated future liability for compensation *to secure payment of all administrative and legal costs relating to or arising from the employer's self-insuring.*" Cal. Lab. Code §§ 3701(a), (b) (emphasis added). Thus, the Labor Code makes clear that administrative and legal costs are a part of the security deposit. This conclusion is reinforced by Labor Code § 3744(a) and § 3744(b), which provide that the Fund has the right and obligation to recover reasonable administrative and legal costs from an insolvent self-insurer and from an insolvent self-insurer's security deposit.

To the extent Gallagher is arguing that the text of Labor Code § 3744(c) expressly limits the types of damages the Fund may seek from a third-party administrator to an alleged shortfall in a security deposit, the Court also denies Gallagher's motion. That section provides that "[t]he fund shall have the right to bring an action against any person to recover compensation paid and liability assumed by the fund, including, but not limited to, ... any person whose negligence or breach of any obligation contributed to any underestimation of the self-insured employer's total accrued liability as reported to the director." Cal. Lab. Code § 3744(c). Thus, this section explains that the Fund may bring an action "to recover compensation paid and liability assumed," against persons other than an insolvent self-insurer. *See Self-Insurers Security Fund v. ESIS, Inc.*, 204 Cal. App. 3d 1148, 1155 (1988) (noting that Section 3744(c) gives the Fund the right "to seek legal action against others to recover moneys it expends in

12

continuing an insolvent self-insured's compensation payments"). The Court does not read § 3744(c) to limit the damages the Fund may seek to the amount by which a security deposit was underestimated. Rather, the Court reads that provision to set forth the types of persons from whom the Fund may seek recovery. *See also id.* at 1155 n.5.

Accordingly, if the Fund succeeds in establishing negligence, the Court concludes that the Fund will be entitled to recover legal and administrative costs to the extent those costs are included as part of the allegedly deficient security deposit. If the Fund intends to seek legal and administrative costs or other types of "out-of-pocket" damages as an essential element of each its first four claims for relief against Gallagher, the Fund must establish the requisite causation. Similarly, to the extent the Fund seeks to recover contractual attorneys' fees, it must show that it is entitled to those fees.

For all of these reasons, the Court DENIES Gallagher's motion in its entirety.

## CONCLUSION

For the reasons set forth in this Order, the Fund's motion is DENIED, and Gallagher's motion also is DENIED.

**IT IS SO ORDERED.**

Dated: October 11, 2007

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE